laCANNELLA, Judge.
Plaintiff, Barbara Frizzell, appeals from a judgment dismissing her medical malpractice case which was rendered in favor of defendant, Dr. Frederick Lee. For the reasons which follow, we affirm.
Plaintiff was first seen by defendant, an obstetrieian/gynecologist, on August 30, 1983 for a routine pelvic examination with a follow-up visit on September 20, 1983. She did not see defendant again until April 1984 when she came in, complaining of pain in her right lower quadrant. On April 13, 1984, defendant ordered an intravenous pyelogram *56 (IVP), a barium enema and a pelvic ultrasound. The IVP and the barium enema were reported as normal and the pelvic ultrasound revealed the appearance of a mass on one of the ovaries.
Defendant informed plaintiff of the test results and recommended ban exploratory laparotomy with possible removal of the ovaries. Plaintiff consulted with her family physician and agreed to have the surgery. The operation was performed by defendant on April 26,1984. Adhesions were lysed and the ovaries were removed during the operation. A benign cyst was found on one ovary. The immediate recovery period was uneventful and follow up visits seemed normal with only a need for hormone regulation.
In September 1984, plaintiff began experiencing pain in her lower back which localized in her left renal area. Plaintiff was admitted to the hospital and another IVP was run on October 5, 1984. This time the test results were not normal, rather they revealed an obstruction in the uretary process. Dr. Ronald Lewis, a board certified urologist, recommended immediate surgery which was performed the following day, October 6, 1984. Dr. Lewis performed a laparotomy and a cystogram, finding an obstruction in the left ureter which required the removal of that portion of the ureter. During the operation, Dr. Lewis noted the presence of old suture material in the obstructed area. He sent the removed specimen to pathology. The pathologist could not identify suture material in the submitted specimen. Plaintiffs recovery was uneventful. Follow-up revealed that plaintiff has sustained permanent damage to her left kidney, which now only functions at 15 to 20 percent of normal capacity, as a result of the obstruction.
Plaintiff filed the instant suit against defendant, alleging medical [ malpractice in that he failed to meet the applicable standard of care in his treatment of plaintiff which ultimately caused the damage to her kidney. A medical review panel was requested and convened. The panel found unanimously that the evidence did not support the conclusion that defendant failed to meet the applicable standard of care in his treatment of plaintiff. Trial was conducted on November 2nd and 3rd, 1993. The case was taken under advisement and judgment was rendered on January 12, 1994 in favor of defendant, finding that plaintiff failed to prove her case by a preponderance of the evidence. It is from this judgment that plaintiff appeals.
On appeal plaintiff argues that the trial court erred in failing to find that defendant breached his duty of care in two respects: (1) the trial court erred in failing to find that the defendant performed unnecessary surgery; and (2) the trial court erred in failing to find that defendant negligently sutured plaintiffs left ureter and failed to recognize and repair that injury, thereby causing permanent damage to her left kidney.
Defendant points out that plaintiff is asking this court to review and reverse the factual findings of the trial court, which it made based on the weight given and interpretation of the evidence and expert opinion introduced at trial. Accordingly, defendant argues, that plaintiff is not entitled to a reversal of the trial court judgment absent a showing that it is manifestly erroneous, a showing plaintiff can not make on the record before the court.
|5It is well settled that, on appellate review of a factual determination, the reviewing court may not set aside a factual determination made by the trier of fact in the absence of manifest error or unless it is clearly wrong. Also, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State through DOTD, 617 So.2d 880 (La.1993). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra.
*57 In the present case, we must consider whether the trial court judgment, finding that defendant did not breach the applicable standard of care in his treatment of plaintiff by either operating on her unnecessarily or negligently, is reasonable in light of the record in this case.
NECESSITY OF SURGERY
Plaintiff contends that the operation that defendant performed was not necessary. Instead of operating, plaintiff argues, defendant should 16have kept plaintiff under observation to determine if the mass was changing or growing. Instead, defendant immediately recommended surgery. In support of this argument, plaintiff relies on the testimony of her expert, Dr. Hillabrand, who testified that plaintiffs condition was not acute and did not present an emergency situation. He further stated that defendant should have obtained further diagnostic information by observation of the mass for change rather than operating so quickly.
In contrast, defendant himself testified that in view of plaintiffs history, the decision to do the surgery at that time was correct. Defendant also presented the testimony of three other physicians who all stated that defendant’s decision to operate was reasonable under the circumstances.
Plaintiff was a 51 year old post-menopausal female. She had previously had a hysterectomy in 1967. A cervical remnant had been left from that surgery. She came to defendant’s office with pain in the right lower quadrant. Upon examination, defendant found fullness and the cervical remnant. Further tests were performed ruling out kidney problems and intestinal problems and indicating a one by one-and-a-quarter inch cystic mass. The mass could not be biopsied because of fear of rupture and the spread of cancer if the cyst was malignant. Additionally, the rate of cancer in women of this description is very high. Therefore,, defendant testified that it was his opinion that surgery was indicated to examine the mass and to and remove it if necessary. 17Pefendant recommended surgery to his patient. She consulted another physician who, although not a gynecologist, concurred in the recommendation, then she returned to defendant for the surgery.
Dr. Krupp, a member of the medical review panel, testified that, in view of plaintiffs history, surgery was definitely indicated as the only way to rule out cancer. If it was cancer, the time the patient waits before removal allows the cancer to spread and reduces the prognosis for full recovery. Although he did not state that he would have necessarily operated immediately, he stated that it would depend on his consultation with the patient, but that it was not a breach of the standard of care to operate immediately.
Dr. Blanchard, a member of the medical review panel, testified that plaintiff was unquestionably an appropriate candidate for surgery given her history. She testified that cancer is very common and the second or third leading cause of death in women. Therefore it must be unequivocally ruled out as soon as possible. It was her opinion that defendant acted appropriately in recommending and performing the surgery.
Dr. Torres, a medical review panel member, echoed the other panel members sentiments, that surgery was necessary and -within the appropriate standard of care in this case.
Based on the evidence and expert testimony, we find that the trial court conclusion, that defendant did not breach the appropriate standard |sof care in this case, was reasonable and not manifestly erroneous. While the record may show that another physician might not have operated immediately in the same situation, it does not show that defendant’s decision to operate was erroneous or a breach of the appropriate standard of care. The record amply supports the trial court’s judgment in this regard and does not present reversible error.
NEGLIGENT SURGERY
Plaintiff argues that defendant failed to use due diligence in performing the surgery on plaintiff. More particularly, plaintiff contends that defendant sutured the ureter during the surgery causing the eventual obstruction and damage to her kidney which was diagnosed six months later.
*58 In support of this argument, plaintiff relies on the testimony of Dr. Lewis, the operating physician who found and removed the obstruction in plaintiffs ureter. In his operative report, it was noted that he found the left ureter to be enlarged and that there was an area of severe scarring and apparent uret-eral stricture. He noted that “[evidence of foreign material, probably old suture material was found at area of apparent stricture of ureter.” It was Dr. Lewis’• opinion that he saw what he believed to be pieces of chromic suture, as used in the operation by Dr. Lee, at the site of the obstruction of the ureter which was the cause of the scarring and eventual obstruction.
Plaintiff argued that the suture material at the site of the ^obstruction was a clear indication that Dr. Lee had negligently performed the operation by stitching the ureter and not discovering the error and correcting it before he concluded the operation.
Plaintiff also introduced into evidence a medical report that stated that injury to the ureter is a risk of hysterectomy surgery but that it can and should be avoided. Injury can be prevented by careful identification of the ureter. But in all events if the ureter is injured the physician should recognize the injury and immediately repair it.
Plaintiff also introduced the testimony of Dr. Hillabrand that it was a breach of the standard of care for an injury to occur to the ureter during the procedure performed by Dr. Lee and for him not to have seen it and corrected it.
In contrast, defendant introduced the report by the pathologist who studied the obstructed ureter tissue sample submitted by Dr. Lewis. The pathologist’s report stated that he found no suture material in the tissue sample.
Defendant also presented testimony by the three medical review panel doctors. Dr. Blanchard’s testimony was the most favorable, although each physician supported the defense position. Dr. Blanchard pointed out that had the ureter been pierced with a stitch it would have started leaking at that very moment and evidence of the injury would have presented much sooner than the six month interval in this case. She also stated that no suture material would remain evident in the body after | ipsix months. The sutures are designed to dissolve and they would not have been present or visible. Rather, Dr. Blanchard opined that, because of the delay in the onset of symptoms and plaintiffs history of scarring, it was more likely that the ureter was slowly obstructed by growing scar tissue or adhesions. She testified that despite a physician’s best efforts, sometimes adhesions form randomly and unpredictably. She noted that the procedure that defendant used in performing plaintiffs surgery was designed specifically to prevent injury to the ureter. Therefore, she concluded that the evidence presented to her did not show that defendant had breached the appropriate standard of care in the surgery he performed on plaintiff.
Dr. Krupp’s testimony was basically in accord with Dr. Blanchard’s that there was no evidence that defendant sutured plaintiffs ureter. He noted that if the ureter had been sutured, evidence of that fact would have been present almost immediately in a urine test and that test was clear. It certainly would have been evident sooner than six months from the time of the operation. He stated that in his 47 years of practice he has never seen suture material last six months and does not believe that Dr. Lewis saw suture material at the obstruction site. He felt that the obstruction was caused by scarring that choked off the blood supply.
Dr. Torres testified similarly. He noted that plaintiff had tremendous amounts of adhesions. He stated that there was simply no evidence that defendant did anything wrong. If he had pierced the ureter | nwith a suture, it would have leaked probably causing an infection, but would have been evident by blood in the mine which was not there. He also stated that had a suture been placed around the ureter, not piercing it, and pulled tight, ligating the ureter, symptoms would have been immediately evident. He also noted that defendant used the retroperitoneal approach in performing the operation, which is indicated in a patient with adhesions specifically to protect the ureter. He, like the other physicians, simply felt that there was *59 no eyidence that defendant breached the appropriate standard of care. Concerning Dr. Lewis’ observation that he thought he saw old suture material, Dr. Torres felt that the pathologist report was far more reliable and that Dr. Lewis was simply mistaken.
After reviewing the record, we find that each side presented evidence to support its view of the case. However, the trial court found defendant’s evidence more credible and convincing. The trial court concluded that the evidence did not support a finding that defendant breached the appropriate standard of care in his treatment of plaintiff. We find that this determination was a reasonable one, based on the record as a whole, and we conclude that it was not clearly wrong or manifestly erroneous.
Accordingly, for the reasons stated above, the judgment of the district court in favor of defendant, dismissing plaintiffs suit, is affirmed.

AFFIRMED.